COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


JACQUELINE ANN LESESNE
                                            MEMORANDUM OPINION* BY
v.        Record No. 0334-06-4             JUDGE ROSEMARIE ANNUNZIATA
                                                  JANUARY 9, 2007
THADDEUS JOHN ZABLOCKI


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Peter M. Fitzner (Matthews, Snider, Norton & Fitzner, on briefs), for
appellant.

Brien A. Roche (Eric David Kessel; Johnson & Roche, on brief), for
appellee.


Jacqueline Ann Lesesne (wife) appeals the trial court's decision in this divorce

proceeding providing for child support, spousal support, equitable distribution of the parties'

assets, and division of marital debt.  Wife contends the trial court abused its discretion in

(1) failing to deviate from the child support guidelines to include the costs of private school

tuition; (2) determining the amount and duration of the spousal support award; (3) denying her

request for an award of attorneys' fees and costs; and (4) dividing the marital debt equally

between the parties.  Pursuant to Rule 5A:21(b), Thaddeus John Zablocki (husband) raises

additional claims on appeal.  He contends the trial court erred in (1) finding that clear and

convincing evidence established he conveyed his separate interest in the family home as a gift to

wife in December 1997 at the time of the refinancing; (2) failing to consider, pursuant to Code

§ 20-107.3(E) husband's monetary contribution to the acquisition of the family home relative to

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

wife's contribution; and (3) failing to impute income to wife in determining spousal support. For the reasons that follow, we affirm the trial court's decision in part, reverse it in part, and remand for reconsideration consistent with this opinion. We decline to address the merits of the attorneys' fees question, because we conclude that wife failed to preserve for appellate review the argument she now makes on appeal.

The parties married on December 27, 1994 and separated on March 21, 2004. Three children were born during the marriage. On or about April 2, 2004, wife filed for divorce from husband. On January 20, 2005, the trial court entered an agreed custody order resolving all issues of child custody and visitation between the parties. That order, which was incorporated into the trial court's December 16, 2005 final decree, granted joint legal custody of the minor children to the parties, with primary physical custody to wife and scheduled visitation to husband. It also provided that "[t]he parties shall consult with each other and exercise best efforts to resolve any disputes, but the mother shall have final say over all health care decisions and educational decisions pertaining to the children, unless the Court decides otherwise." The outstanding issues of equitable distribution, child support, spousal support, and attorneys' fees and costs were heard before the trial court on June 20, 21, and 22, 2005. At that time, husband and wife, both in good physical and mental health, were fifty-one and forty-three years old, respectively.

I. Equitable Distribution: Division of Debt and Marital Home

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

> "In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). "A decision regarding equitable distribution . . . will not

> be reversed unless it is plainly wrong or without evidence to support it." Rahbaran v. Rahbaran, 26 Va. App. 195, 205, 494 S.E.2d 135, 139 (1997).

Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000). In addition, "Virginia law does not establish a presumption of equal distribution of marital assets," and a trial court has discretion to make an equal or disparate division as long as it considered the factors in Code § 20-107.3(E). Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998).

### A. Debt

Wife argues that the trial court abused its discretion in dividing credit card and consumer debt incurred during the marriage equally between the parties. She claims the evidence established that, but for one credit card account and one joint checking account established five years after their marriage, husband controlled the family finances and was primarily responsible for the debts incurred.

The evidence showed that the parties accumulated substantial credit card, home maintenance, and other debt. According to husband, the parties had $60,878 in credit card debt, $11,379 in overdraft debt to Citibank, $7,324 in tax debt, $1,000 in legal debt, and $3,546 in debt related to the swimming pool maintenance at the marital home. By order dated January 19, 2006, after considering the trial exhibits, the affidavits, and memorandum, the trial court found the marital debt totaled $83,533.58. The trial court arrived at this figure by accepting the amount of marital debt alleged by husband, $84,126.57, and subtracting $592.99, in order to accurately reflect the amount owed on the Citibank Overdraft Checking Account #671, as of the date of the separation. The trial court also found husband had serviced the debt in the amount of $19,632.13 since the separation. The trial court ordered wife to pay fifty percent of both figures.

Wife maintained she was the signatory on only one of husband's credit cards, the Citibank card, and that she removed herself from that card in November 2002. In addition, she

was not added as a signatory on the Citibank checking account until August 2000. Husband acknowledged that wife was a signatory on only one of his credit cards, the Citibank card. However, he asserted the Citibank card was the primary card used during the marriage by the parties for family expenses. The credit card statements admitted into evidence provide credible evidence to support husband's contention that the parties primarily used the credit cards to pay family expenses, such as groceries, gas, and clothing. While husband admitted he used the credit cards at times for business expenses, he testified that his employer reimbursed those expenses and that he deposited the money into the parties' joint checking account. Moreover, husband testified that, in October and November 2002, just before wife removed herself from the Citibank credit card account, two cash advances totaling $10,500 were made against the credit card without his knowledge. Wife both denied and then failed to adequately explain the claimed cash advances.

The trial court credited husband's testimony, found the debt to be marital, and held each party fifty-percent responsible for those debts.

"All property . . . acquired by either spouse during the marriage . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.2(A). This presumption applies to the parties' assets as well as their debts. Cf. Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460 S.E.2d 591, 595 (1995) (referring to "marital property" as defined in Code § 20-107.3 as including both assets and debts). "The court shall . . . have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the [ten] factors listed in [Code § 20-107.3(E)]." Code § 20-107.3(C). Those factors include "the basis for such debts and liabilities" and "[s]uch other factors as the court deems necessary or appropriate." Code § 20-107.3(E)(7) and (11).

- 4 -

The evidence, viewed in the light most favorable to husband, the prevailing party below, supports the trial court's findings. As set out above, the debts acquired by the parties during their marriage are presumed to be marital debts. Code § 20-107.3; Stumbo, 20 Va. App. at 692-93, 460 S.E.2d at 595. Wife bore the burden of proving that the disputed credit card and other consumer debts were husband's separate property and the evidence, viewed in the light most favorable to husband, proved those debts were marital. Credible evidence supports the trial court's conclusion that the parties jointly incurred the debts primarily for family-related expenses. Accordingly, we find no abuse of discretion in the trial court's equal division of the parties' credit card and consumer debt.

## B. Marital Residence

On appeal, we view the evidence in the light most favorable to the prevailing party. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). On January 27, 1995, the parties purchased a home located in McLean, Virginia for $700,000. The deed titled the property to the parties as tenants in common, husband having a 5/6 interest and wife having a 1/6 interest. Husband and wife contributed $250,000 and $50,000, respectively, towards the down payment on the house. Wife testified the home "was meant to be our [family] home," not an investment and that she assumed she and husband would own the property equally. However, contrary to that assumption, she became aware of the disparity in interest each was to enjoy in the property at settlement. Wife testified that, although she and husband discussed the titling issue at settlement, husband insisted that the property be held as tenants in common, with their respective interests reflecting their relative monetary contributions. Although she "didn't like it, . . . there was nothing [she] could do about it."

Husband testified that the property was titled to grant him 5/6 interest and 1/6 interest to wife when it was purchased because he "was putting a substantial portion of [his] life savings into

- 5 -

this house, and [he] wanted some comfort that in case things did not work out between [him] and [his] wife [he] would retain [his] interest in the home." Husband denied coercing wife into agreeing with the terms of the first deed and denied that she was surprised at settlement by the division of their interests in the property, testifying that she knew about it two weeks earlier.

After the 1995 purchase, wife continued to express her dissatisfaction with the "way the deed was written." She contended that husband responded that if she wanted a greater interest in the property, she would have to pay him to acquire it. She testified that she paid him $1,000 per month for a total of twelve months in order to increase her interest in the property. Husband acknowledged receiving and accepting some payments from wife, but contended he applied the funds towards the mortgage and family expenses and that, in any event, wife had only made three to five such payments.

In 1997, the parties' residence was retitled as tenants by the entirety with right of survivorship. Both parties signed the deed. At the time of the retitling, husband was a named partner at Ernst & Young and wife was pregnant with their second child and not working outside the home. She testified that husband "was ecstatic about making partner, and that . . . he said that . . . I didn't have to make payments to him anymore . . . ." According to wife, the parties then "made the choice that [wife's] role would be [as] a stay at home mother, and . . . [they] could own the home together and in common."

Responding to a query about the motivation underlying the retitling, wife testified that husband

> was giving me gifts . . . including -- IRA and his 401K, and this was part of it when he made partner. He was giving me interest or greater interest in property that he had, and that was the background with which he did this.
>
> But . . . what was going through his mind, you know, exactly at that moment, I don't know. But the context was that he

was making partner and he could afford to make a gift to me and to put me on his IRA and put me on his 401K.

Husband claimed that, when the loan on the property was refinanced in 1997, the property was retitled as tenants by the entirety because the parties had been married three years, he did not have a will, and he thought that holding the property as tenants by the entirety would be the best arrangement for the children in the event of death. Husband did not believe the new deed establishing equal ownership rights had any impact on his $250,000 contribution. Rather, he believed that the retitling was "just a mechanism for conveying property in the event of death . . . ." Husband testified in his deposition that, at the 1997 refinancing settlement, with respect to the form of the deed, he "did not really give it too much thought." He said he was given a lot of information and papers and "[t]his [was] just one of the documents that was there for signature and I signed it." Husband denied making a gift to wife.

On this record, the trial court ordered the home sold and the proceeds be divided equally between the parties. In so ruling, the trial court found as follows:[1]

> At the time the property was retitled, [husband] had just been made partner at Ernst & Young, the parties had one child, and [wife] was pregnant with their second child. From all the testimony, the Court concludes that the retitling was done knowingly by [husband] with the intent to make a gift to [wife] and, as [wife] testified, she took it as a gift. In short, the Court [did] not find persuasive [husband's] testimony that the retitling was a simple oversight.

Husband argues that wife failed to prove by clear and convincing evidence that he transferred to wife as a gift his separate interest in the marital home in December 1997 at the time of the refinancing and that the trial court erred in not properly considering his monetary contribution to the family home relative to that made by wife, pursuant to Code § 20-107.3(E)(2) and (6). We agree.

---

[1] Rulings made by the trial court in its August 4, 2005 opinion letter were incorporated into the December 16, 2005 final decree of divorce.

The classification of property was a question of fact, and the trial court's ruling will not be disturbed on appeal unless plainly wrong or without evidence to support it. Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005). Code § 20-107.3(A)(3)(f) provides:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

"No presumption of a gift arises from the act of retitling." Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003). Rather, the burden of proof that the transfer was a gift is upon the party seeking to establish the gift by clear and convincing evidence. Id. "[T]o establish the existence of a gift, wife was required to prove, by clear and convincing evidence, the following three elements: '(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Robinson v. Robinson, 46 Va. App. 652, 665-66, 621 S.E.2d 147, 154 (2005) (*en banc*) (quoting Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996)). Here, husband argues wife failed to prove the first element, specifically, "'his donative intent and the nature and extent of that intent.'" Id. (quoting Cirrito v. Cirrito, 44 Va. App. 287, 303, 605 S.E.2d 268, 276 (2004)).

In light of husband's testimony that the retitling was used as a mechanism to transfer the property at death and that he had no intent to gift his separate interest in the property to wife, wife's mere belief, uncorroborated by any other evidence, that husband gifted his separate interest in the marital home to her at the time of the 1997 refinancing is insufficient to prove donative intent by clear and convincing evidence. Wife admitted she did not know what husband intended at the time of the refinancing. The fact that husband had made partner at Ernst &

Young, coupled with wife's belief that husband could afford to give her a greater interest in the property, did not prove husband, in fact, intended to do so. Accordingly, we reverse the trial court's finding that wife sustained her burden of proving a gift by clear and convincing evidence. See Kelln v. Kelln, 30 Va. App. 113, 124, 515 S.E.2d 789, 794 (1999) (citing In re Marriage of Wojcicki, 440 N.E.2d 1028, 1030-31 (Ill. App. Ct. 1982) (husband's transfer of his separate real property to joint tenancy with his wife for the purpose of avoiding probate was not a gift of the property to the marital estate)), and remand for the trial court to reconsider equitable distribution of the marital home.

## II. Spousal Support:

### A. Amount and Duration

Wife contends the trial court abused its discretion in awarding her spousal support in the amount of $1,800 per month and limiting the award to five years in duration.

Code § 20-107.1(E)(7) and (8) require the trial court to consider the property interests of the parties when making a spousal support award. See Stainback v. Stainback, 11 Va. App. 13, 15, 396 S.E.2d 686, 688 (1990). Code § 20-107.1(E)(7) requires the court to consider "the property interests of the parties, both real and personal, tangible and intangible." Code § 20-107.1(E)(8) requires the court to consider "the provisions made with regard to marital property under § 20-107.3." Equitable distribution must take place before a spousal support award can be made. See Frazer v. Frazer, 23 Va. App. 358, 381, 477 S.E.2d 290, 301 (1996); Kaufman v. Kaufman, 7 Va. App. 488, 493, 375 S.E.2d 374, 377 (1988).

"[W]here an equitable distribution award is reversed on appeal and 'the provisions with regard to the marital property are to be considered on remand, the court must necessarily re-examine spousal support in the light of whatever new or different considerations flow from

the additional proceedings.'" Robinson, 46 Va. App. at 671, 621 S.E.2d at 156 (quoting

McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 161 (1985)).

Accordingly, because we reverse the equitable distribution award and remand for reconsideration, we further direct the trial court, on remand, to reconsider the issue of spousal support.

## B. Imputation of Income to Wife

Husband argues that, in calculating spousal support, the trial court abused its discretion by failing to impute to wife additional income in the amount of $54,000, which husband's expert testified wife could earn in addition to her current part-time earnings as a Certified Public Accountant.

Under appropriate circumstances, a trial court may impute income to a party who seeks spousal support. Srinivasan, 10 Va. App. at 734, 396 S.E.2d at 679. The court "must look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Id. at 735, 396 S.E.2d at 679 (quoting Young v. Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)). Unless the trial judge misapplies the legal standard or misallocates the burden of proof, the question "'[w]hether a person is voluntarily unemployed or underemployed is a factual determination,'" O'Hara v. O'Hara, 45 Va. App. 788, 798, 613 S.E.2d 859, 864 (2005) (quoting Blackburn v. Michael, 30 Va. App. 95, 102, 575 S.E.2d 780, 784 (1999)), one firmly placed "within the [sound] discretion of the trial court . . . ." Sargent v. Sargent, 20 Va. App. 694, 704, 460 S.E.2d 596, 601 (1995). Employing the most deferential standard of appellate review, we reverse such findings "only if plainly wrong or not supported by credible evidence." Budnick v. Budnick, 42 Va. App. 823, 841, 595 S.E.2d 50, 59 (2004).

In addressing the question of whether to impute income to wife, the trial court ruled that it was not convinced by the testimony of husband's vocational expert witness, Lawrence Sinsabaugh. While the trial court accepted Sinsabaugh's testimony that wife could earn additional income if she worked full-time, the trial court found that, "because of the ages of the children [9, 7, and 6 at the time of the trial court's decision], it is appropriate for [wife] to continue to work on a part-time basis, at least for the next five years." (Footnote omitted.) In so ruling, the trial court considered that wife

> is a devoted mother who spends her time driving the children to school and activities, participating extensively in school-related activities, and caring for them in the home. Furthermore, the parties mutually agreed during the marriage that it was in the best interest of the family for [wife] to stay home with the children as much as possible.

The trial court's factual findings are supported by credible evidence in the record, and we find no abuse of discretion in its decision not to impute additional income to wife. "[A] trial court is not required to accept the opinion of an expert. 'It is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'" Piatt v. Piatt, 27 Va. App. 426, 434, 499 S.E.2d 567, 571 (1998) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)).

Based upon this record, we cannot say the trial court's decision refusing to impute income to wife was plainly wrong or without credible evidence to support it. While we remand for the trial court to reconsider the spousal support award, we affirm its ruling not to impute additional income to wife, because any new or different rulings the trial court might make on remand concerning equitable distribution of the marital home and determination of the amount and duration of spousal support under the guidelines will not impact the trial court's ruling on this issue.

III.  Child Support:  Private School Tuition

Wife contends the trial court abused its discretion in refusing to deviate from the child support guidelines to include the cost of the children's private school tuition, which at the time of trial totaled $4,092 per month.  She argues that, except for one week, the children attended private school at all times prior to and after the parties' separation, by agreement of the parties; that the children have been successful in that environment; that their lives would be disrupted if they were required to transfer to public school; and that husband has the ability to pay private school tuitions.

The evidence showed that during the marriage, the parties' children attended private school, except for one week during which the oldest child attended public school because he did not have a place at the private school.  The private school attended by the children at the time of the separation is located in Bethesda, Maryland, and offers instruction through second grade.  As of June 2005 trial, the oldest child had attended kindergarten, first grade, and second grade at the private school. He would be required to attend a new school upon entering the third grade.  The next child had attended kindergarten and first grade at the private school and was to enter the second grade there in the fall.  The youngest child, having attended kindergarten at the private school, was to begin the first grade there in the fall.

Wife contended it would be best for the children to remain in private school because it offered a "small setting" and placed "a big emphasis on character . . . building."  However, she admitted that no educational disability, developmental problem, or religious reasons mandated that the children attend private school.  Wife asserted that husband never objected to the children going to private school until the divorce proceedings were instituted.  Her argument rested in part on the evidence that, during the marriage and for a time period after the separation, husband paid the children's private school costs.

- 12 -

Husband, on the other hand, contended that his "position has always been that it would be great if we could afford it, but we really could not, and that it would be better if the children attended public school." Husband contested wife's claims that the children needed to attend private school, and argued that wife was "fanatical" about the issue. He stated his impression as a resident of Fairfax County that the public schools were "very good."

Based upon this record, the trial court denied wife's request to deviate from the child support guidelines to include private school costs, finding as follows:

> The Court has considered each of the statutory factors under Va. Code § 20-108.1 and the Court finds that guideline child support is appropriate in this case, based on the income set above. [Wife] has asked for a deviation from the guidelines in order to send the parties' children to private school. . . . The children did attend private school before the parties' separation and [wife] did attend private school when she was younger. However, Fairfax County has an excellent public school system. Furthermore, no testimony was given as to any special emotional or physical needs that would require the children to attend private school. There was also no testimony given at trial regarding the need for private school due to religious training. Sending the parties' children to private school is a priority for [wife]; it is not a priority for [husband].

In Ragsdale v. Ragsdale, 30 Va. App. 283, 516 S.E.2d 698 (1999), we recognized that

> "The determination of child support is a matter of discretion for the trial court, 'and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 253, 498 S.E.2d 425, 432 (1998) (quoting Young v. Young, 3 Va. App. 80, 81, 348 S.E.2d 46, 47 (1986)). Although the amount of child support called for by the guidelines set forth in Code § 20-108.2 is presumptively correct, this presumption may be rebutted by evidence pertaining to, *inter alia,* the ability of each party to provide child support, the best interests of the child, the standard of living enjoyed by the family during the marriage, and other factors "necessary to consider the equities for the parents and children." Code § 20-108.1(B). See Niemiec v. Dep't of Soc. Servs., Div. of Child Support Enforcement, 27 Va. App. 446, 450-51, 499 S.E.2d 576, 579 (1998). Moreover, in Solomond v. Ball, we stated that a parent may be required to pay for private educational expenses, even though such expenses exceed the guidelines, when there is a

- 13 -

> demonstrated need for the child to attend private school *and* the parent has the ability to pay. See 22 Va. App. 385, 391, 470 S.E.2d 157, 160 (1996). Among the factors that are relevant to determining whether there is a need for private education, the court may consider the child's "attendance at private school prior to the separation and divorce" and the family's tradition. See id.

30 Va. App. at 295, 516 S.E.2d at 703-04. The court may also consider "the availability of satisfactory public schools . . . , the child's special emotional or physical needs, [and] religious training . . . ." Solomond, 22 Va. App. at 391, 470 S.E.2d at 160.

We find that the trial court considered the relevant factors in making its child support award and did not abuse its discretion in refusing to deviate from the guidelines to include the cost of private school tuition. Assuming that husband has the ability to pay the private school costs, wife failed to present evidence demonstrating a need – educational, emotional, or developmental - to continue private school education for the children. Furthermore, wife's contention that requiring the children to attend public school would disrupt their education was not supported by the evidence. Under these circumstances, we cannot find that the trial court abused its discretion in refusing to deviate from the child support guidelines to include the cost of the children's private school tuition.

Because the trial court's ruling refusing to deviate from the child support guidelines to include private school tuition costs will not be affected by any new or different findings the trial court might make on remand with respect to equitable distribution of the marital home and determination of spousal support, we affirm that ruling. However, in light of our remand on the spousal support issue, we must necessarily remand for the trial court to reconsider its calculation of the child support award.

Code § 20-108.2, governing the calculation of child support, requires the court to compute "a basic child support obligation" using the schedules set out in the statute. Use of the

- 14 -

guidelines, in turn, requires the court to calculate the parties' monthly gross incomes. Code § 20-108.2(C) includes "spousal support" as part of a party's "gross income."

Code § 20-108.2(C)(4) provides that, for purposes of determining the parties' gross incomes under the statute, "spousal support received shall be included in gross income and spousal support paid shall be deducted from gross income when paid pursuant to an order or written agreement." Thus, in calculating the presumptive amount of child support under the guidelines, the trial court "must include spousal support in the gross income of the receiving spouse and must deduct the amount of spousal support from the gross income of the paying spouse." Frazer, 23 Va. App. at 381, 477 S.E.2d at 301.

IV. Wife's Request for Attorneys' Fees and Costs

The record reflects that wife requested an award of attorneys' fees and costs in her bill of complaint. In her counsel's opening statement at trial, wife informed the trial court that she would seek an award of such fees and costs at the end of trial. Counsel asked the trial court to defer hearing evidence on that issue until after the court had ruled on the support and equitable distribution issues:

> I would ask permission of the court, and hopefully agreement of counsel, that that can be delayed until after all the evidence is in. I believe it could be submitted by affidavit later, since that amount changes day by day, as Your Honor knows, with a case of this type.

The trial judge replied, "All right," and husband's counsel neither objected nor agreed to the wife's suggestion. In her written closing argument, with respect to attorneys' fees and costs, wife wrote, "Reserved pending a merits determination by this Court." Husband made no request for attorneys' fees.

In its opinion letter, the trial court declined to award attorneys' fees to either party. On appeal to this Court, wife contends the trial court "denied her day in court on the attorney's fee

issue" by denying her request without considering any evidence on the issue, contrary to its concurrence to defer the issue until after a ruling on the merits. She argues the trial court denied her due process.

We find that wife's argument is defaulted, as she never presented it to the trial court. We, therefore, decline to address it. Although wife filed with the trial court a motion for reconsideration, an amended motion for reconsideration, and a response to husband's opposition to her motion for reconsideration after it issued its opinion letter denying her request for attorneys' fees, she never argued or brought to the trial court's attention the issue she now makes on appeal, to wit, that she was "denied her day in court on the attorney's fee issue." Instead, she argued the merits of her attorneys' fees claim, contending that husband should pay all or a reasonable portion of those fees. In, addition, while wife's counsel signed the final decree noting her exception to the trial court's adverse rulings, the ruling made by the trial court with respect to wife's attorneys' fees request was based on an evaluation of the merits of her claim. Thus, wife's exception noted on the final decree was unrelated to the procedural due process violation she asserts on appeal. In short, wife failed to make the argument to the trial court that she was "denied her day in court." Therefore, any objection or exception noted on the final decree, was insufficient to preserve that argument for appellate review. Because wife denied the trial court the opportunity to correct the error she now alleges, Rule 5A:18 bars us from considering this question on appeal. The record does not establish any exceptions to the rule.

For the reasons stated, we affirm the trial court's decision in part, but we hold that the trial judge erred in ruling the evidence was sufficient to prove that husband made a gift to wife of

his separate interest in the marital home at the time of the refinancing in 1997.  Accordingly, the

decree appealed from is remanded for proceedings consistent with the rulings expressed herein.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>