COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Clements and Haley
Argued at Chesapeake, Virginia

TIMOTHY LANCE WESTFALL

v. Record No. 0067-07-1

DEBORAH SUE WESTFALL[1]

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
JANUARY 22, 2008

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Westbrook J. Parker, Judge

Charles H. Staples (Benchmark Legal Services, on brief), for appellant.

Cheshire I'Anson Eveleigh (Wolcott Rivers Gates, P.C., on brief), for appellee.

Timothy L. Westfall ("husband") appeals the terms of a final decree of divorce between him and Deborah Sue Westfall ("wife"), entered by the Circuit Court of the City of Suffolk ("trial court"). Husband argues that: (1) the trial court erred in its failure to appoint a guardian *ad litem*, (2) the trial court improperly calculated wife's post-separation mortgage payments in dividing and distributing the parties' marital property, (3) the trial court erred in considering husband's adultery as grounds for an unequal distribution of marital property, (4) the trial court erred in deviating from the presumptive child support amount in calculating husband's child support obligations, and (5) the trial court erred in ordering husband to have no contact with his children, unless initiated by the children themselves. For the reasons that follow, we affirm the judgment of the trial court, and award wife the cost of attorney's fees on appeal.

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellee's brief reflects that she is currently known as Deborah Sue Zirpolo.

## ANALYSIS

### A. Standard of Review

We review the evidence in the light most favorable to wife as the party who prevailed below. Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). We review the trial court's decision for abuse of discretion in advancing the best interests of the children. See id. at 327-28, 387 S.E.2d at 795 ("In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child."). A trial court's determination of the children's best interests is not reversible on appeal unless the trial court abuses its discretion in making that determination, or the decision lacks supporting evidence. See M.E.D v. J.P.M., 3 Va. App. 391, 398, 350 S.E.2d 215, 220 (1986). Furthermore, an appellate court will not reverse a trial court's equitable distribution unless it '"has not considered or has misapplied one of the statutory mandates, or . . . the evidence fails to support the findings of fact underlying [its] resolution of the conflict in the equities.'" von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997) (quoting Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990)).

### B. The Appointment of a Guardian *Ad Litem*

Husband argues that the trial court erred in its failure to appoint a guardian *ad litem* for his children because an appeal "was very likely." Rule 5A:18 provides in pertinent part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Husband concedes in his designation of questions presented that this issue was not preserved for appeal and asks us to invoke the ends of justice exception. However, husband's concession is a concession of law, by which we are not bound. Jiron-Garcia v. Commonwealth, 48 Va. App. 638, 652, 633 S.E.2d

744, 751 (2006). Husband made several motions for the trial court to appoint a guardian *ad litem*, both orally and in written form. The trial court denied all of husband's motions. Because "the trial court and [the] opposing party [were] given the opportunity to intelligently address, examine, and resolve [this] issue[] in the trial court," Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002), we are satisfied that husband preserved this issue for appeal. Accordingly, we address the merits of this issue without invoking the ends of justice exception. See Rule 5A:18.

"Although no statute expressly prohibits, permits, or requires a circuit court to appoint a guardian *ad litem* for a child involved in a contested custody dispute, Virginia courts have frequently done so." Verrocchio v. Verrocchio, 16 Va. App. 314, 316-17, 429 S.E.2d 482, 484 (1993). "The established practice is that a guardian *ad litem* may be appointed after a trial judge makes a preliminary finding that the best interests of the child require such appointment." Id. at 317, 429 S.E.2d at 484. "This practice is necessitated by the reality that the interests of a parent in a volatile custody dispute are not always consistent with those of the child." Id.

The trial court stated that it preferred to appoint a guardian *ad litem* when children in divorce cases "hav[e] trouble understanding what is going on and don't have somebody they can trust." The trial court found that the children "[o]bviously . . . trust[ed] Mrs. Doucette." Thus, the trial court found that the best interests of the children did not require the appointment of a guardian *ad litem*.

Husband argues that the trial court should have appointed a guardian *ad litem* because an appeal "was very likely." In support of his argument, husband cites Farley, 9 Va. App. 326, 397 S.E.2d 794. However, the issue in Farley involved the Virginia Uniform Child Custody Jurisdiction Act and had nothing to do with the appointment of a guardian *ad litem*. We know of

no reason why a trial court should be required to appoint a guardian *ad litem* simply because an appeal "was very likely."

Husband also argues that the trial court should have appointed a guardian *ad litem* because Dr. Zwemer, in his expert opinion, stated that Doucette had a conflict of interest in serving as therapist for both husband and wife and the children. "[I]t is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." O'Rourke v. Vuturo, 49 Va. App. 139, 150, 628 S.E.2d 124, 129 (2006) (quoting Piatt v. Piatt, 27 Va. App. 426, 435, 499 S.E.2d 567, 571 (1998)). Thus, the trial court was free to give little weight to Zwemer's testimony or reject it completely. In any event, husband offers no authority suggesting that a trial court should be required to appoint a guardian *ad litem* for this reason alone, especially given the fact that Doucette resigned her role as family therapist for husband and wife, thus ending any supposed conflict of interest.[2] Accordingly, we hold that the trial court did not err in its refusal to appoint a guardian *ad litem* and affirm the judgment of the trial court.

### C. The Valuation of the Marital Home

Husband next argues that the trial court erred in calculating wife's post-separation mortgage payments in the division and distribution of the parties' marital home. Specifically, husband argues that the trial court erred in its classification of the home based on the date of the parties' evidentiary hearing, rather than the date of the parties' separation. Therefore, husband contends, the trial court improperly considered wife's post-separation mortgage payments as her separate property.

[2] At oral argument, husband also argued that the fact that he represented to the trial court that an appeal was likely required the appointment of a guardian *ad litem*. Husband cited no authority for this assertion, and we know of none.

Code § 20-107.3(A)(2) provides in pertinent part that:

> Marital property is . . . [a]ll . . . property . . . acquired by either spouse during the marriage, *and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent*[.]

(Emphasis added.) Furthermore, the legislature left the date of classification up to the determination of the courts, but in "most cases the appropriate date" is the date of separation. Price v. Price, 4 Va. App. 224, 231-32, 355 S.E.2d 905, 909 (1987). The purpose of classifying the property as of the date of separation is to allow the trial court to divide only that property stemming from the marital partnership. Brett R. Turner, Equitable Distribution of Property § 5:28, at 427-28 (3d ed. 2005).

Husband argues that the trial court improperly classified the marital home from the date of the equitable distribution hearing. Thus, husband argues that wife's post-separation mortgage payments improperly created a separate property interest in the residence. Had the trial court properly classified the home as of the separation date, husband contends that it would have classified the home as marital, as opposed to part marital, part separate, or "hybrid property."

In making this argument, husband mischaracterizes the trial court's classification of the marital home. In our view, the trial court did, in fact, use husband and wife's separation date as the classification date and classified the marital home as marital property *as of that time*. Because wife made the subsequent mortgage payments from her own salary, the trial court considered these mortgage payments as wife's separate property. Thus, the trial court ultimately classified the marital residence as hybrid property.[3] Under the circumstances of this case, we

---

[3] Code § 20-107.3(A)(3)(d) states, in pertinent part:

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, *to the extent the*

find no error in this classification. To hold otherwise would be to entitle husband to the benefits of wife's separate mortgage payments, which occurred after the separation and did not derive from the marital partnership. Thus, we affirm the judgment of the trial court in this regard, as well.

### D. Adultery as Grounds for Unequal Distribution of Property

Husband's third argument on appeal is that the trial court erred in using his adultery as grounds for uneven distribution of marital property, when there was clear evidence of wife's condonation of his adultery for a substantial period of time prior to the separation. Husband concedes that this issue was not preserved for appeal and again asks us to invoke the ends of justice exception to Rule 5A:18.

"Application of the ends of justice exception requires proof of an error that was 'clear, substantial and material.'" Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 927 (2000) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989)). "The record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Id. (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)). Upon our review of the record, we are unconvinced that a miscarriage of justice has occurred and decline to invoke the ends of justice exception. Accordingly, we do not address this issue.

### E. Child Support

Husband next argues that the trial court erred in deviating upward from the presumptive child support guidelines contained in Code § 20-108.2 in establishing his child support

---

> *contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.*

(Emphasis added.)

obligations. Specifically, husband argues that the deviation was based on projected private school tuition costs and was thus not supported by "relevant evidence," as required by Code § 20-108.1.

Under Rule 5A:18, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. "A general argument or an abstract reference to the law is not sufficient to preserve an issue." Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) (citations omitted). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Id. Thus, "though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." West Alexandria Properties, Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980).

In objecting to the terms of the final divorce decree, husband only stated that he "object[ed] . . . to the Court's award of child support on the grounds that it deviated [upwards] from the presumptive amount calculated in accordance with [Code] § 20-108.2 . . . and place[d] an extremely unfair burden on [him], which he [could not] afford." Husband also objected to the child support award because it required payment for "clubs, projects, field trips, uniforms, fees and costs[,]" as opposed to the basic expenses of private school tuition. Essentially, husband objected to the trial court's child support award simply on the grounds that it was too high, and he could not afford it. He mentioned nothing about the deviation being unsupported by "relevant evidence," nor did he mention Code § 20-108.1. Because husband did not raise this specific argument in the trial court, this issue is not preserved for appeal. Furthermore, unlike husband's other questions presented, he does not ask us to invoke the ends of justice exception to Rule 5A:18. We will not consider the ends of justice exception *sua sponte*. Edwards, 41 Va. App. at

761, 589 S.E.2d at 448. Accordingly, we refrain from addressing this question presented, as well.

F. Visitation

Husband's final argument on appeal is that the trial court erred in denying husband court-ordered visitation, issuing a "no contact" order against him, and barring him from the premises of the children's school. Husband essentially argues that the trial court's decision gave too much weight to the children's wishes and "unduly penalized" him for his erratic behavior, given his fundamental rights as a parent. We disagree.[4]

The "paramount consideration for a trial court," on the issue of determining custody is the child's best interest. Farley, 9 Va. App. at 329, 387 S.E.2d at 796. However, the '"liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court.'" Griffin v. Griffin, 41 Va. App. 77, 82, 581 S.E.2d 899, 901 (2003) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). "Custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interests test, Code § 20-124.3, reflects a finely balanced

[4] Wife argues that this issue was not preserved for appeal, because, in his objection to the final divorce decree, husband did not mention his erratic behavior, which he specifically labels as "social functioning personality deficits." Husband objected to the decree on the grounds that it improperly gave the children "control over any visitation with the parent[, and] deprive[d] [husband] of exercising a parental relationship[.]" Although this objection is vaguely worded, we consider it sufficient to alert the trial court to the nature of husband's argument. Accordingly, we address the merits of husband's argument.

judicial response to this parental deadlock." Id. at 83, 581 S.E.2d at 902.[5] Consequently, in a custody dispute between two parents, a trial court is required to place a greater emphasis on the

[5] Code § 20-124.3 provides:

> In determining best interests of a child for purposes of determining custody or visitation arrangements including any pendente lite orders pursuant to § 20-103, the court shall consider the following:
>
> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
>
> 2. The age and physical and mental condition of each parent;
>
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
>
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;
>
> 6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;
>
> 7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;
>
> 8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;
>
> 9. Any history of family abuse as that term is defined in § 16.1-228. If the court finds such a history, the court may disregard the factors in subdivision 6; and
>
> 10. Such other factors as the court deems necessary and proper to the determination.

best interests of the child than on the rights of the parents. See Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998). Furthermore, "[a]s long as the trial court examines the [statutory] factors [of Code § 20-124.3], it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).

The record supports the trial court's conclusion that court-ordered visitation with husband was not in the children's best interests. Doucette reported that the children were "extremely angry and very fearful of their father . . . and his reactions to what [was] going on in the home." In fact, Doucette stated that she had been in practice for twenty-five years in the area of divorce, and had never before witnessed the type of resistance to unsupervised visitation that one of the Westfall daughters exhibited. While husband asserts that "[his son] clearly enjoyed his contacts with his father and valued their relationship," the parties' son in fact complained of stomach aches before a visit and had difficulty sleeping during his visits with his father. Furthermore, husband would often come to his daughters' athletic events after his daughters had asked him not to and approach them without a supervisor present. An athletic coach at the children's school stated that the children appeared attentive and focused when their father was not present at their athletic events, but would become withdrawn and sullen when he arrived. See Code § 20-124.3(3) ("[t]he relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child").

---

> The judge shall communicate to the parties the basis of the decision either orally or in writing.

Husband also repeatedly violated court orders and was not cooperative in family therapy sessions with his children. See Code § 20-124.3(7) ("[t]he relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child"). Husband frequently wandered the marital home nude after being asked not to, viewed pornography while the children were nearby, and consumed alcohol when the children were getting ready for school. See Code § 20-124.3(5) ("[t]he role that each parent has played and will play in the future, in the upbringing and care of the child"). Finally, husband attempted to convince his son to take sides during the divorce proceedings. See Code § 20-124.3(6) ("[t]he propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child").

While acknowledging that he wandered the house nude, viewed pornography, and drank alcohol in the presence of his children, husband stresses that this behavior was caused by his "social functioning personality deficits" as mentioned by Zwemer. At oral argument, in fact, husband's counsel characterized him as a "square peg in a round world." Husband, therefore, appears to argue that, as a matter of law, his "personality deficits" excuse his erratic behavior in regards to the trial court's custody determination. Husband offers no authority for this proposition, and we accordingly find this argument to be without merit.[6]

---

[6] Husband also cites our holding in Denise v. Tencer, 46 Va. App. 372, 617 S.E.2d 413 (2005), in which we stated:

> "Without a finding of harm to the child, a court may not impose its subjective notions of 'best interests of the child' over the united objection of the child's parents without violating the constitutional rights of these parents. In this regard, the parents' constitutional rights take precedence over the 'best interests' of the child."

The record supports the trial court's finding that court-ordered visitation is not in the children's best interests. Accordingly, we affirm the judgment of the trial court.

G. Attorney's Fees

The final issue before us is wife's request for attorney's fees on appeal. In determining the propriety of such an award, we "view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Two of husband's questions presented are procedurally defaulted. Husband makes many of his other arguments either citing no authority or relying on out-of-context interpretations of existing authority. In general, his arguments are largely frivolous. Furthermore, husband created a six-volume joint appendix in excess of 3,000 pages, the vast majority of which has nothing to do with the issues on appeal.[7] Despite the length of the joint appendix designated by husband, husband makes very few citations to the record in his statement of facts and almost no citations to the record in his statement of the case. Finally, husband misstates several material facts from the record in his arguments. Because the litigation did not "address[] appropriate and substantial issues[,]" Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), we grant wife's request for attorney's fees and costs on appeal.

---

Id. at 386, 617 S.E.2d at 420 (quoting Williams v. Williams, 24 Va. App. 778, 785, 485 S.E.2d 651, 654 (1997)). However, Denise dealt with the issue of grandparent visitation over the objection of the natural parent, and has no application to this case. Indeed, the quotation husband cites refers to the "united objection of the child's parents" against third party visitation. Thus, we find husband's argument in this regard meritless as well.

[7] For example, the joint appendix contained an article about tantric sex.

## CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in the entry of its final decree of divorce between husband and wife. Accordingly, we affirm the judgment of the trial court. We remand this case to the trial court for a determination of wife's attorney's fees.

Affirmed and remanded.