COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


CHRISTINE M. STADTER

OPINION BY
v.      Record No. 1494-07-2                 JUDGE JEAN HARRISON CLEMENTS
JUNE 3, 2008
JENNIFER L. SIPERKO


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
George Mason, III, Judge

Joseph A. Vance, IV (Rebecca K. Glenberg; Georgia K. Sutton,
Guardian *ad litem* for the minor child; American Civil Liberties
Union of Virginia Foundation, Inc.; Gardner, Maupin, Sutton &
Haney, P.C., on brief), for appellant.

Phillip S. Griffin, II (Phillip S. Griffin, II, P.C., on brief), for
appellee.

*Amicus Curiae*: Liberty Counsel (Rena M. Lindevaldsen, on
brief), for appellee.


Christine M. Stadter (appellant) appeals from a decision of the trial court denying her

petition for visitation with B.E.S. (child), the biological daughter of Jennifer L. Siperko (mother).

On appeal, appellant contends the trial court erred in refusing to hold that appellant was a *de

facto* parent and in failing to apply a "best interests of the child" standard to determine whether

she was entitled to visitation. Alternatively, appellant contends the trial court erred in denying

her petition for visitation based on its finding that she was a "person of legitimate interest"

pursuant to Code § 20-124.1. For the reasons that follow, we affirm the judgment of the trial

court.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to mother, the party prevailing below. Surles v. Mayer, 48 Va. App. 146, 156, 628 S.E.2d 563, 567 (2006); Yopp v. Hodges, 43 Va. App. 427, 430, 598 S.E.2d 760, 762 (2004). So viewed, the evidence establishes that appellant was involved in a cohabiting lesbian relationship with mother from May 1999 through their separation early in the summer of 2004. Sometime during their relationship, mother decided and appellant agreed to have a child through the artificial insemination of mother by an unascertainable father. Throughout the pregnancy, the parties shared prenatal expenses and responsibilities. Appellant was present for the birth on January 10, 2003, and child was initially given a hyphenated form of the parties' last names. For the remainder of their cohabitation, the parties shared parenting responsibilities; mother was the primary care provider, while appellant provided substantial financial support. Appellant did not adopt child, and there was no written pre-separation agreement concerning appellant's parental rights.

After the parties separated, appellant continued to provide financial support and physical care. Appellant approached mother about setting up a binding visitation schedule, which mother refused. On September 29, 2004, appellant filed a petition for visitation in the juvenile and domestic relations district court. Mother was served notice on October 7, 2004, and she severed all contact between appellant and child the next day. Appellant had no contact with child until temporary supervised visitation was ordered to begin on January 13, 2005. Appellant visited with child for approximately sixty hours over the following months, until the last day of supervised visitation on September 30, 2005. No visitation followed.

Appellant's petition for visitation was denied in the district court on October 24, 2005, and that decision was appealed to the trial court. An April 10, 2006 hearing was held on appellant's motion for temporary visitation based on appellant's asserted status as child's *de*

*facto* parent. Expert and lay testimony taken at the hearing showed that child cared for and had bonded with appellant and would benefit from continuing interaction, but no evidence showed that she would be harmed without visitation. The motion for temporary visitation was denied.

A hearing on the petition for visitation was held on October 16, 2006. The parties stipulated to evidence from the April temporary visitation hearing, and several additional witnesses were called. Dean Kirschner, Ph.D. (Kirschner), testified as an expert witness on behalf of appellant that child had "every potential [to experience] harm, if visitation [were] not awarded." Kirschner did not examine child, and based his testimony solely on documentary evidence and the transcripts of the April hearing. Edward W. Gratzick (Gratzick), a clinical social worker who had interviewed child on two occasions during the two weeks prior to the October hearing, testified on behalf of mother that he could detect no emotional problems stemming from the months that had passed without visitation, and opined that no benefit would be gained from future visitation with appellant.

For purposes of the visitation provisions of Code § 20-124.2, the trial court found that appellant was a person with a "legitimate interest" in child and that mother was a fit parent.[1] Recognizing that sixteen months had elapsed since child had last seen appellant, the trial court also found that mother had successfully "weaned" daughter from further involvement with appellant. Noting the testimony of the witnesses and the "animosity between the parties," the trial court determined that appellant had not met her burden to prove by "clear and convincing evidence" that child would suffer "actual harm" if visitation were not awarded. Accordingly, the trial court denied appellant's petition for visitation by opinion dated January 29, 2007.

A final order was entered on June 4, 2007, and this appeal followed.

---

[1] Appellant does not challenge the finding that mother is not unfit.

## II. ANALYSIS

"Because the trial court heard the evidence at an *ore tenus* hearing, its decision 'is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it.'" Piatt v. Piatt, 27 Va. App. 426, 432, 499 S.E.2d 567, 570 (1998) (quoting Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986)); see also Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). A trial court's determination with regard to visitation is reversible only upon a showing that the court abused its discretion. M.E.D. v. J.P.M., 3 Va. App. 391, 398, 350 S.E.2d 215, 221 (1986).

Here, an admittedly fit biological parent has objected to the granting of visitation to a person found to have a legitimate interest in the child, and the trial court ruled in the parent's favor. "In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley, 9 Va. App. at 327-28, 387 S.E.2d at 795. However, "the right of the parents in raising their child is a fundamental right protected by the Fourteenth Amendment." Williams v. Williams, 24 Va. App. 778, 783, 485 S.E.2d 651, 654 (1997), aff'd as modified, 256 Va. 19, 501 S.E.2d 417 (1998).

> [T]here is a presumption that fit parents act in the best interests of their children . . . . Accordingly, so long as a parent is fit, there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

Troxel v. Granville, 530 U.S. 57, 68-69 (2000) (citations omitted). Accordingly, courts may grant visitation to a non-parent in contravention of a fit parent's expressed wishes only when justified by a compelling state interest. Williams, 24 Va. App. at 783, 485 S.E.2d at 654. "[T]o constitute a compelling interest, state interference with a parent's right to raise his or her child must be for the purpose of protecting the child's health or welfare." Id. We have held that compelling state interests in a child's health or welfare will operate to overcome the presumption in favor of a fit biological parent in certain specific circumstances, including where a parent "voluntarily relinquishes" custody and care of a child to a non-parent, or where it has been "established by clear and convincing evidence [that there are] 'special facts and circumstances . . . constituting an extraordinary reason for taking a child from its parent, or parents.'" Bailes v. Sours, 231 Va. 96, 100, 340 S.E.2d 824, 827 (1986) (quoting Wilkerson v. Wilkerson, 214 Va. 395, 397-98, 200 S.E.2d 581, 583 (1973)).

Within this legal framework, Code § 20-124.2(B) permits a non-parent with a "legitimate interest" in a child to petition for and be granted visitation, "upon a showing by clear and convincing evidence that the best interests of the child would be served [by visitation]." However, "the statutory best-interests analysis established by Code § 20-124.3 'unconstitutionally infringes on [the] fundamental parental right if it authorizes a court to disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party . . . files a visitation petition . . . .'" Surles, 48 Va. App. at 167, 628 S.E.2d at 574 (quoting Griffin v. Griffin, 41 Va. App. 77, 82, 581 S.E.2d 899, 901-02 (2003)); see Troxel, 530 U.S. at 67. The evidence supporting non-parent visitation must therefore be sufficient to overcome the constitutional concerns inherent in the Troxel presumption; a court awarding non-parent visitation over a fit parent's objection based on the child's best interests must first find clear and convincing evidence that a "denial of visitation would be harmful or detrimental to

- 5 -

the welfare of the child." Williams, 24 Va. App. at 784, 485 S.E.2d at 654; see also Denise v. Tencer, 46 Va. App. 372, 386, 617 S.E.2d 413, 420 (2005). "'In this regard, the parents' constitutional rights take precedence over the "best interests" of the child.'" Denise, 46 Va. App. at 386, 617 S.E.2d at 420 (quoting Williams, 24 Va. App. at 785, 485 S.E.2d at 654).

When trial courts consider whether to award visitation to a non-custodial parent, a standard more favorable to the party seeking visitation is applied. Pursuant to Code § 20-124.2(B), courts "shall assure minor children of frequent and continuing contact with both parents, . . . [and a]s between the parents, there shall be no presumption or inference of law in favor of either." The trial court "shall consider" all the factors set forth in Code § 20-124.3 to determine whether visitation with the non-custodial parent is in the child's "best interests," and the court has discretion to award or deny visitation on that basis. Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 339 (1999).

Appellant's first argument relies on the doctrine of *de facto* or psychological parent, which has been utilized in other jurisdictions to rebut the Troxel presumption in favor of biological parents. Citing numerous decisions from these jurisdictions, appellant contends that the trial court should have applied the more favorable parent-standard in her petition for visitation because she had a parent-like relationship with child. Conceding that there is no binding authority to support the argument she advances, appellant nevertheless argues that where a biological parent has actively encouraged a parent-child relationship with a cohabiting partner who assumed parental responsibilities for a length of time sufficient to establish a bond with the child, see, e.g., Holtzman v. Knott (In re H.S.H.-K.), 533 N.W.2d 419, 435-36 (Wis. 1995), the partner may assert the Fourteenth Amendment rights of a parent set forth in Troxel and Williams and is entitled to invoke the more favorable standard when seeking visitation.

Accepting *arguendo* appellant's assertion that the trial court found facts consistent with the non-binding authority she cites, the issue she puts before us is whether we will implement—by judicial fiat—a visitation doctrine of *de facto* or psychological parent in the Commonwealth. We note that no appellate court in Virginia has ever so applied the *de facto* parent doctrine, despite numerous opportunities under analogous circumstances to do so, see, e.g., Surles, 48 Va. App. 146, 628 S.E.2d 563. We likewise decline to do so now.

Appellant asserts that our failure here to adopt a *de facto* parent doctrine will constitute a repudiation of the particular third party rights we recognized in Denise as "analogous to the constitutional rights enjoyed by a parent," 46 Va. App. at 388, 617 S.E.2d at 421, including the widely recognized right of standing in a visitation dispute, see T.B. v. L.R.M., 786 A.2d 913, 917 (Pa. 2001) ("'[W]here the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent . . . , [other states'] courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.'" (quoting J.A.L. v. E.P.H., 682 A.2d 1314, 1320 (Pa. Super. Ct. 1996))). This assertion is entirely without merit, since the rights of such third parties are protected in Virginia under the "person with legitimate interest" provisions of Code § 20-124.2. See Surles, 48 Va. App. at 165, 628 S.E.2d at 572 ("To qualify as a 'person with a legitimate interest,' . . . a petitioner need not establish that he is a 'grandparent[], stepparent[], former stepparent[], blood relative[] [or] family member[].' Rather, the petitioner need only show that he maintains a relationship with the child similar in nature . . . ." (alterations in original) (quoting Code § 20-124.1)). And while appellant takes issue with the Virginia requirement that a person standing in her particular shoes must prove that a denial of visitation

would actually harm the child, we are aware of no reason or authority to suggest that the actual harm requirement represents an undue burden on the right to seek visitation.

Indeed, as appellant points out in her brief, courts in jurisdictions that have embraced an application of the *de facto* parent doctrine in visitation cases have cited the potential for harm to the child as their reason for doing so.  See, e.g., In the Interest of E.L.M.C., 100 P.3d 546, 560 (Colo. Ct. App. 2004) ("[I]nherent in the bond between child and psychological parent is the risk of emotional harm to the child should that relationship be significantly curtailed or terminated."); Roth v. Weston, 789 A.2d 431, 445 (Conn. 2002) ("[W]hen a person has acted in a parental-type capacity for an extended period of time, becoming an integral part of the child's regular routine, that child could suffer serious harm should contact with that person be denied or so limited as to seriously disrupt that relationship."); Rideout v. Riendeau, 761 A.2d 291, 301 (Me. 2000) ("The cessation of contact with a [non-parent] whom the child views as a parent may have a dramatic, and even traumatic, effect upon the child's well-being.").  From this we can discern that the *de facto* parent doctrine is simply the means by which the judiciaries of some of our sister states give effect to the general principle that actual psychological harm to the child will overcome the Troxel presumption in favor of a biological parent in visitation cases.  As there already exists in Virginia a legal framework for the protection of the interests of a child who might suffer actual harm when separated from a person with a legitimate interest, as well as a mechanism to litigate fully the concerns of the person seeking visitation, we need not rewrite Virginia law to recognize the *de facto* parent doctrine in visitation.

Appellant next asserts that mother has relinquished parental rights to appellant and that appellant may therefore assert the rights of a parent in her petition for visitation.  To support this argument, she points out that the presumption in favor of the biological parent can be rebutted by "voluntary relinquishment" of child custody and care to another person.  Bailes, 231 Va. at 100,

340 S.E.2d at 827; see, e.g., Shortridge v. Deel, 224 Va. 589, 594, 299 S.E.2d 500, 503 (1983) (finding, in a custody action involving a seventeen-month-old child, that the presumption in favor of the biological mother was rebutted where the mother voluntarily gave the child to a family who had promised to care for the child in order to prevent his abortion, and who had named the child and exclusively cared for him since his birth with the expectation that they would keep and raise the child as their own). The line of custody cases relying on the principle of voluntary relinquishment addresses circumstances in which a biological parent or custodian has completely abandoned a child's care to a non-parent then subsequently seeks to assert parental rights. See, e.g., Shortridge, 224 Va. at 594, 299 S.E.2d at 503; Bidwell v. McSorley, 194 Va. 135, 72 S.E.2d 245 (1952) (applying the principle of voluntary relinquishment in a case where a parent placed a newborn child into the exclusive care of an adopting family for almost one year before seeking rescission of the adoption); see also, e.g., Fleshood v. Fleshood, 144 Va. 767, 769-70, 130 S.E. 648, 649 (1925) (treating relinquishment of custody and abandonment of a child simultaneously and as essentially indistinct for purposes of a custody analysis). This line of cases is manifestly inapposite to the case at bar.

Appellant nevertheless advances the proposition that mother "voluntarily relinquished *partial* custody" (emphasis added) of child when she permitted appellant to "take on significant child care responsibility," and urges that we remand this case with instruction that the trial court reconsider appellant's petition under a "best interests of the child" standard. However, appellant cites no authority that will support a principle of "partial relinquishment" by which a non-parent who is permitted to perform child-rearing functions may assert the rights of a parent for purposes of visitation. Indeed, it is easy to conceive of circumstances where the application of such a principle would yield unjust and absurd results: if, for example, a professional child care provider—to whom parents relinquish significant child care responsibilities on a daily basis—

were to seek visitation with a child over parental objection.  For these reasons, we reject appellant's argument.

Appellant also argues that "special facts and circumstances" exist in the present case. Specifically, she cites to Bailes, 231 Va. 96, 340 S.E.2d 824, and argues the facts and circumstances in this case, particularly in light of Kirschner's testimony, 1) rebutted the Troxel presumption in mother's favor, such that the trial court should have applied a "best interests of the child" standard for visitation rather than an "actual harm" standard, and 2) demonstrated to the trial court that child "will suffer psychological harm" if appellant is not granted visitation.

Special facts and circumstances must be proved by "clear and convincing evidence." Bailes, 231 Va. at 100, 340 S.E.2d at 827.

> The term "clear and convincing evidence" is defined as the measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction upon the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the degree of proof beyond a reasonable doubt as in criminal cases; it does not mean clear and unequivocal.

Bottoms, 249 Va. at 413, 457 S.E.2d at 105.  Having reviewed the evidence and the trial court's conclusions, we cannot say that the trial court plainly erred when it failed to find "special facts and circumstances" sufficient to justify an application of the "best interests" standard. Kirschner's testimony was essentially at odds with that adduced from Gratzick, and it is apparent that he failed to convince the trial court to the requisite standard of proof.  "[I]t is well settled that issues of credibility and the weight of the evidence are within the unique province of the trier of fact."  Parish v. Spaulding, 26 Va. App. 566, 575, 496 S.E.2d 91, 95 (1998); see Anderson v. Anderson, 29 Va. App. 673, 687, 514 S.E.2d 369, 376 (1999) ("[T]he trier of fact determines the credibility and weight of the evidence.").  We will not reweigh Kirschner's testimony so as to rebut the Troxel presumption when the trial court found that testimony to be unpersuasive.

Moreover, we cannot say that the trial court abused its discretion when it found insufficient evidence to conclude child would suffer harm without visitation.

> To justify a finding of actual harm under the clear and convincing burden of proof, the evidence must establish more than the obvious observation that the child would benefit from the continuing emotional attachment with the non-parent. No doubt losing such a relationship would cause some measure of sadness and a sense of loss which, in theory, "could be" emotionally harmful. But that is not what we meant by "*actual* harm to the child's health or welfare."

Griffin, 41 Va. App. at 85-86, 581 S.E.2d at 903 (quoting Williams, 24 Va. App. at 784-85, 485 S.E.2d at 654). Appellant's sole witness on the issue of harm was Kirschner, who never examined child, and his testimony was contradicted by Gratzick, who had recently interviewed the child. Moreover, Gratzick's testimony that child had not been harmed by the months without visitation that had passed between hearings went entirely uncontroverted, and is the only direct evidence of child's actual health and welfare subsequent to a period without visitation.

But even were Kirschner's testimony accepted on its face, his testimony dealt only in terms of potentiality. Indeed, the harm he addressed was by definition theoretical, since he had not examined the child. We therefore cannot say that the trial court plainly erred or abused its discretion when it determined that actual harm to child had not been sufficiently proven.

We therefore need not reach the issue of the child's best interests with regard to visitation. See id. at 83, 581 S.E.2d at 902 ("[W]hen fit parents object to non-parental visitation, a trial court should apply 'the "best interests" standard in determining visitation *only after* it finds harm if visitation is not ordered.'" (quoting Williams, 256 Va. at 22, 501 S.E.2d at 418)). For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

Beales, J., concurring.

Although I agree that the trial court here did not err, my reasons for reaching this decision differ from those expressed in the majority opinion. Therefore, I write separately.

Mother is the biological and legal parent of the child, a fact that appellant does not contest. Mother is a fit parent, which appellant also does not contest. Therefore, mother has a "fundamental right . . . to make decisions concerning the care, custody, and control" of her child, a right that the state cannot infringe upon without some compelling state interest. Troxel v. Granville, 530 U.S. 57, 66 (2000); see Williams v. Williams, 256 Va. 19, 21, 501 S.E.2d 417, 418 (1998).

Appellant, on the other hand, has no legal claim under United States law or Virginia law to parental rights. She did not give birth to the child, see Code § 20-49.1(A), she did not adopt the child, see Code § 20-49.1(C), and no previous court order gave her any parental rights. Code § 20-158(A), which defines the parentage of a child conceived by assisted conception, as was the case here, states that the gestational mother and the husband of that mother are the parents. The language of this statute does not state or suggest that any other person is also a parent to a child conceived in this manner. Under Virginia law, therefore, appellant is not a parent to this child. In fact, appellant concedes that no Virginia statutory or case law nor any United States constitutional law explicitly gives her *parental* rights to this child, although she is a person with a legitimate interest in the child, as the trial court found. See Code § 20-124.1. The United States Supreme Court cases that she cites do not suggest that a non-parent, such as appellant, has rights equivalent to the rights of a fit, biological parent. For example, Moore v. City of East Cleveland, 431 U.S. 494 (1977), involves housing codes and extended families, and Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816 (1977), involves unfit parents and foster care regulations. The cases from our sister states that appellant cites carry no

- 12 -

precedential value here in Virginia, especially since their decisions are based on the legislative decisions and common law of those states.

The General Assembly has enacted statutes that allow infringement upon a parent's right to raise and nurture his or her child only in particular circumstances. Code § 16.1-283, for example, allows the Commonwealth to terminate the rights of unfit parents. The General Assembly also has passed legislation that allows a person with a legitimate interest in a child, such as appellant, to prove by clear and convincing evidence that, if some actual harm to the child's health or welfare will occur, then the Commonwealth sanctions interference with a fit parent's rights. Code § 20-124.2(B); Williams, 256 Va. at 21-22, 501 S.E.2d at 418. Here, appellant concedes and the trial court found that mother is a fit parent. Therefore, the trial court applied the appropriate law as the General Assembly has not enacted a statute recognizing a *de facto* parent with essentially the same rights and obligations towards a child as a fit, actual parent.

Since the General Assembly has not determined that a compelling state interest exists for interference with the decisions of a fit, biological parent, apart from Code § 20-124.2, I do not believe that the courts should *or can* judicially legislate such an infringement. It is "the role of the General Assembly, not the judiciary, to change a rule of law that has been relied upon by bench and bar for so long." Shipman v. Kruck, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004).

Appellant does not argue that any Virginia statute or common law principle requires the application of the *de facto* parent concept as she defines it. Nonetheless, appellant asks this Court to create by judicial fiat a new category of parent, a *de facto* parent, who would have the same rights as an actual, fit parent. However, in this case,

> "it is the responsibility of the legislature, not the judiciary, to
> formulate public policy, to strike the appropriate balance between
> competing interests, and to devise standards for implementation."
> Wood v. Board of Supervisors of Halifax Cty., 236 Va. 104, 115,

> 372 S.E.2d 611, 618 (1988); accord Morris v. Morris, 238 Va. 578, 588, 385 S.E.2d 858, 864 (1989).  Once the legislature has acted, the role of the judiciary "is the narrow one of determining what [the legislature] meant by the words it used in the statute." Diamond v. Chakrabarty, 447 U.S. 303, 318 (1980).  "[T]he contentions now pressed on us should be addressed to the political branches of the Government . . . and not to the courts."  Id. at 317.

Dionne v. Southeast Foam Converting & Packaging, Inc., 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990).  As the General Assembly has defined "parent" in the context of assisted conception, which occurred in this case, and as appellant can point to no statutory or constitutional provision that supports her argument for the application of the *de facto* parent concept in this context, I believe this Court not only "need not" but also *should not* "rewrite Virginia law" to apply such a concept here.  Since, as the majority opinion correctly holds, appellant's constitutional rights are not infringed under the current law, the decision to adopt such a *de facto* parent doctrine in Virginia, in my view, is clearly that of the General Assembly, the people's elected representatives, rather than the responsibility of the judicial branch.

On the other question presented, I do agree with the majority opinion that the trial court properly applied Code § 20-124.1.  Therefore, I concur in the conclusion of the majority opinion and would also affirm the trial court.