COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Clements
Argued at Richmond, Virginia


WILLIAM JUSTIN WISE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 3094-07-2              JUDGE JEAN HARRISON CLEMENTS
                                                        NOVEMBER 4, 2008
NELIDA VELAZQUEZ


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

Thomas Woodward Ashton; Darren Marshall Hart (Hart & Assoc.,
P.C., on brief), for appellant.

No brief or argument for appellee.

(Nicole Fox McCabe; Nicole Fox McCabe, P.C., on brief),
Guardian *ad litem* for the minor child.  Guardian *ad litem*
submitting on brief.


        William Justin Wise (father) appeals the decision of the trial court granting the petition of

Nelida Velazquez (grandmother) to amend her visitation with father's minor daughter (child).

On appeal, father contends the trial court erred in (1) failing to apply the actual harm standard in

amending the visitation, (2) failing to find the awarded visitation was in child's best interests,

and (3) excluding evidence of grandmother's financial situation.  Additionally, father requests an

award of his appellate attorneys' fees and costs, and the guardian *ad litem* requests an award of

her fees for this appeal.  For the following reasons, we affirm the trial court's judgment, remand

father's request for attorney's fees and costs to the trial court, and grant the guardian *ad litem*'s

request for fees.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

Child was born in June 2003. Child's biological mother (mother) died shortly after child's birth. By order dated November 21, 2003, the Chesterfield County Juvenile and Domestic Relations District Court (J&DR court) granted father, child's surviving biological parent, sole legal and physical custody of child.

On July 30, 2004, the trial court entered a final consent order reflecting the agreement between father and grandmother, child's maternal grandmother, that grandmother would have visitation with child "two (2) Saturdays per month" and "provide childcare as agreed on by the parties." The order also remanded future visitation matters to the J&DR court. No appeal was taken from the trial court's order.

Grandmother subsequently petitioned the J&DR court to amend the July 30, 2004 visitation order. Claiming father had failed to permit her to receive the agreed upon two Saturdays per month of court-ordered visitation, grandmother requested that the court award her "detailed structured visitation." Father opposed amending the trial court's visitation order. On October 19, 2005, the J&DR court entered an order granting "reasonable visitation to [grandmother], as determined by father."

Grandmother appealed the J&DR court's decision to the trial court. Again citing father's failure to allow her to exercise her previously ordered visitation rights, grandmother urged the trial court to award her a detailed, set visitation schedule.

At the *de novo* hearing on her petition to amend the July 30, 2004 consent visitation order, grandmother initially indicated that she was seeking "structured visitation" with child because that was "the only way that [she would] be able to see her." However, she subsequently tempered her request for relief, indicating, through counsel, that she would be satisfied with "reasonable, liberal visitation, [at] reasonable times and places, to include at least two 24 hour periods during each calendar month to be arranged by the parties." Grandmother presented extensive evidence regarding child's close relationship with her and the other members of child's extended maternal family and the positive interaction child had with those family members during her visitation with grandmother.

Conversely, father presented extensive evidence regarding grandmother's criminal history since the entry of the July 30, 2004 consent visitation order[1] and the alleged criminal behavior of Steven Velazquez, grandmother's husband and child's maternal grandfather (grandfather). However, father indicated at the hearing, through counsel, that he did not object to grandmother having liberal and unstructured visitation with child and only opposed any modification of the July 30, 2004 order that would result in additional, structured visitation "beyond what [was] already in place."[2] Father specifically testified at the hearing that he did not object to child having visitation with grandmother and that he agreed it was "important" for child to have a relationship with her. Such visitation, he testified, "was a good thing" for child. He objected, though, "to being ordered . . . to give visitation." He did not "understand why [he] should be ordered to do something with [his] own child." Asked, however, why he had not

---

[1] In connection with separate incidents involving the former girlfriend of one of grandmother's sons, grandmother was convicted of contributing to the delinquency of a minor and interfering with the property rights of another.

[2] In light of the similarity of the parties' respective positions, the trial court, on more than one occasion, asked counsel what the actual dispute between the parties was and why it could not be resolved on their own.

provided previously court-ordered visitation to grandmother in the past, he responded: "I was of the understanding that I didn't have anything in writing. Of course, I was younger then to really pay attention. I didn't have anything in writing, so I didn't know the order, you know. As soon as I found the order, the visitation took place." He added that it was not his "intent to withhold visitation from" grandmother and that two days of visitation between child and grandmother each month was not "too much visitation." Rather, he did not "believe it should be ordered." He did not want to "have to send" child for visitation on certain days each month. Responding to a question from the court, father explained that he did not "so much object to the visitation as [he] object[ed] to a set visitation." Father further explained that he did not want inflexible, structured, court-ordered visitation to interfere with his family's varying schedule and the normal, unpredictable activities of child's life, such as "sleepovers and birthday parties."

At one point during the hearing, father attempted to elicit testimony from grandmother regarding the source of her household income. The trial court sustained grandmother's objection that such evidence was irrelevant to the issue before the court.

At the conclusion of the *de novo* hearing, the trial court announced its ruling as follows:

> The Court grants to [grandmother] the right of visitation at reasonable times and places to include no less than two 24 hour periods per month. They need not necessarily be together.
> I'm going to allow the parties to work that through and to work it out. And if it doesn't work, then I will, again, see to micro-manage it. If I have to micro-manage it, again, that works a hardship, because it won't be convenient necessarily for [father], it won't be convenient necessarily for [grandmother].

In announcing its ruling, the court made no express findings that the denial of the visitation requested by grandmother would result in actual harm to child's health or welfare or that the visitation granted to grandmother was in child's best interests.

The trial court subsequently entered a final order granting grandmother's petition to amend the July 30, 2004 visitation order and awarding grandmother "reasonable and liberal

- 4 -

visitation with . . . child . . . as agreed between the parties, but in any case to include no less than two (2) periods of visitation per month at reasonable times(s) and place(s) lasting twenty-four (24) hours each." The court's order further provided that child was "to have no contact with" grandfather.

This appeal by father followed.

## II. CLAIMS OF ERROR

On appeal, father challenges the trial court's decision granting grandmother's petition to amend visitation on three grounds. First, he contends the trial court erred in failing to find that denial of the visitation awarded to grandmother would be harmful to child's health or welfare. Additionally, he contends the trial court erred in failing to find that the awarded visitation was in child's best interests. Finally, he contends the trial court erred in not allowing him to present evidence of grandmother's financial situation. We find no merit in father's contentions.

"A trial court's determination with regard to visitation is reversible only upon a showing that the court abused its discretion." Stadter v. Siperko, 52 Va. App. 81, 88, 661 S.E.2d 494, 497 (2008). "An abuse of discretion can be found if the trial court uses 'an improper legal standard in exercising its discretionary function,' Thomas v. Commonwealth, 263 Va. 216, 233, 559 S.E.2d 652, 661 (2002), because a trial court '"by definition abuses its discretion when it makes an error of law,"' Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996))." Congdon v. Congdon, 40 Va. App. 255, 262, 578 S.E.2d 833, 836 (2003).

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts." Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). "On appeal, we view the evidence, and all reasonable inferences that may be drawn from the evidence, in a light most

favorable to . . . the party prevailing below." Yopp v. Hodges, 43 Va. App. 427, 430, 598 S.E.2d 760, 762 (2004).

## A. Actual Harm Standard

Relying on Troxel v. Granville, 530 U.S. 57 (2000), and Griffin v. Griffin, 41 Va. App. 77, 581 S.E.2d 899 (2003), father contends the trial court erred in granting grandmother's petition to amend the July 30, 2004 consent visitation order without first applying the actual harm standard. Specifically, father argues that the trial court could not properly "expand the scope of visitation" beyond what was originally agreed upon without first finding that the denial of the expanded visitation would result in actual harm to child's health or welfare. We conclude that, under the circumstances of this case, no such finding by the trial court was necessary.

Viewed in the light most favorable to grandmother, the record establishes that, pursuant to the terms of the July 30, 2004 consent order, father expressly agreed that grandmother was to receive a minimum each month of two full days of visitation with child—two Saturdays, no less. Any other visitation provided for in that order, in the form of childcare, was, for all intents and purposes, wholly at father's discretion.

Prevented by father from receiving the agreed upon and court-ordered two days per month of visitation, grandmother filed a petition in the J&DR court seeking a fixed visitation schedule specifically identifying the two Saturdays of the month she was to have visitation. However, instead of restricting father's discretionary ability to control when visitation would occur, as grandmother requested, the J&DR court awarded grandmother only "reasonable visitation . . . as determined by father." Mother appealed the J&DR court's ruling to the trial court, where the case was tried *de novo*.

At trial, grandmother ultimately abandoned her initial request for a fixed, specific visitation schedule and, apparently wary of a resolution like the J&DR court's, instead informed

the trial court that she would settle for two full days of visitation each month, as "arranged by the parties." Responding to grandmother's revised request and father's admissions that visitation with grandmother was "important" and "good" for the child and that two days of visitation each month was not "too much," the trial court awarded grandmother "reasonable and liberal visitation with . . . child . . . as agreed between the parties, but in any case to include no less than two (2) periods of visitation per month at reasonable times(s) and place(s) lasting twenty-four (24) hours each."

Discounting the terms of the award subject entirely to father's discretion, it is clear that the trial court awarded grandmother essentially the same visitation it had previously awarded her in the July 30, 2004 consent order—a minimum each month of two full days—except that father now had complete discretionary control over when the two days of visitation would occur since the visitation was no longer required to be on Saturdays. Thus, in light of the fact that the current visitation order provides the same amount of visitation that the original consent order did, and actually provides father more discretionary control over that visitation, we cannot say that the trial court's award of visitation to grandmother constitutes an expansion of the scope of visitation beyond what was originally agreed upon by the parties and ordered by the court in the July 30, 2004 consent visitation order.

Accordingly, even if we assume, without deciding, that, as father argues, a trial court may not properly expand the scope of visitation beyond what was originally agreed upon in a consent order without first finding that the denial of the expanded visitation would result in actual harm to child's health or welfare, we conclude that no such finding was required in this case because the trial court's decision granting grandmother's petition to amend visitation and awarding visitation to grandmother did not constitute an expansion of visitation. Hence, the trial court's failure to make such a finding does not constitute an abuse of discretion under the facts of this

particular case. See Bottoms, 249 Va. at 414, 457 S.E.2d at 105; Stadter, 52 Va. App. at 88, 661 S.E.2d at 497.

B. Best Interests of Child

Father contends the trial court erred in failing to find that the visitation awarded to grandmother was in the best interests of child. We disagree.

"Code § 20-124.3 lists ten factors that a trial court 'shall consider' when 'determining best interests of a child for purposes of determining custody or visitation arrangements.'" Rice v. Rice, 49 Va. App. 192, 201, 638 S.E.2d 702, 707 (2006). "Although the trial court must examine all factors set out in Code § 20-124.3, 'it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999) (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)).

Here, the trial court, in admonishing counsel at trial to "stay on track as to the issue" before the court, expressly identified that issue as follows: "The issue involves this little girl and whether it's in her best interest to maintain a relationship with [grandmother]." During the trial, counsel for both parties expressly addressed child's best interests. In connection with its ruling to award visitation to grandmother, the court specifically found that child had "become integrated into and part of [her maternal extended] family." The court further found: "This case involves a deceased mother and more than an emotional bond. There's a relationship that's been established here that maintains ties to [child's] heritage and memory of her mother." The court subsequently found that even father saw "the significance and importance of this little girl having . . . , as it becomes age appropriate, a memory of her mom, an understanding of her mom's background and heritage." The court further noted its concern "about a 4-year-old little girl and what's in her best interest."

- 8 -

We conclude, based on these circumstances, that, although the trial court did not expressly make a finding that the visitation it awarded grandmother was in child's best interests, it is clear that, in considering child's age, memory, identity, development, heritage, and the significance of the relationships with her mother's family in her mother's absence, the trial court implicitly made such a finding.

Alternatively, father contends the evidence was insufficient to support a finding that the awarded visitation was in child's best interests. Again we disagree.

Viewed in the light most favorable to grandmother, the record establishes that visitation with grandmother allowed child to become an integral part of her deceased mother's family. Specifically, grandmother testified as to the numerous and varied activities in which child engaged in with her cousins, aunts, and uncles during visitation and the close relationship child shared with them. The guardian *ad litem* for child reported that visitation with child's maternal extended family was important for child as she attempted to learn her identity and her heritage in her mother's absence. The guardian *ad litem* further reported that father would not be an adequate "source of information" about child's deceased mother and that interaction with mother's family would be "a positive thing" and fill a "void" in her life. Even father testified that child's relationship with grandmother was important and a "good thing" and that he thought grandmother should be a part of child's life. Indeed, father's main problem with structured, court-ordered visitation was not the visitation itself but the likelihood that such visitation would interfere with his family's schedule and child's social activities.[3] However, despite father's apparent willingness to provide visitation, his visitation history made it clear that he was not

---

[3] Moreover, father's concerns regarding child's exposure to grandfather were alleviated by the court's order that child was to have no contact with grandfather during visitation with grandmother.

inclined to allow grandmother to exercise full visitation without an order in place directing him to do so.

Upon these facts in the record, the trial court could properly conclude that visitation with grandmother was vital to child's development, that it was in child's best interests to have significant exposure to her mother's family, and that court-ordered visitation was necessary to achieve such beneficial development and exposure. Accordingly, we conclude that the record supports the finding that the visitation awarded to grandmother was in child's best interests.

Hence, we find no abuse of the trial court's discretion with regard to these asserted claims of error.

### C. Admissibility of Evidence

Father contends the trial court erred in disallowing evidence regarding grandmother's household financial state. We disagree.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 132, 409 S.E.2d 460, 465 (1991) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). Evidence is admissible if it "is both material—tending to prove a matter [that] is properly at issue in the case—and relevant—tending to establish the proposition for which it is offered." Johnson v. Commonwealth, 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986).

Here, father sought to introduce evidence that grandfather financed his family's home expenses by committing crimes and selling drugs and that grandmother had an unstable financial situation. Grandmother objected, claiming the evidence was irrelevant. The trial court agreed and sustained the objection. In finding the evidence inadmissible, the trial court noted that the

issue before the court was strictly whether the visitation with grandmother was in the best interests of child.

Given father's repeated admissions at trial that he did not object to child's visitation with grandmother and that such visitation was a "good thing" and "important," and that he did not object to grandmother having liberal and unstructured visitation with child as long as it did not involve structured visitation "beyond what [was] already in place," we agree with the trial court that evidence regarding the source of grandmother's income and her financial state was not relevant to the issue whether the visitation was in child's best interests. Father's numerous admissions that grandmother should have visitation rendered such evidence, intended to show grandmother's lack of fitness to have visitation, immaterial.

Accordingly, the trial court did not abuse its discretion in excluding the evidence.

### III. ATTORNEY'S FEES AND COSTS

Father requests an award of the attorney's fees and costs he incurred in connection with this appeal. Accordingly, we remand this case to the trial court for determination, under Code § 16.1-278.19, "whether attorney's fees should be awarded [father] with regard to the appellate proceedings in [this] Court." Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, ___, 666 S.E.2d 361, 371 (2008).

### IV. GUARDIAN *AD LITEM* FEES

The guardian *ad litem* for child requests an award of her fees in connection with this appeal. Finding it proper to do so, we grant the guardian *ad litem*'s request for her fees and remand this case to the trial court for assessment of the recovery of such fees against father.

## V.  CONCLUSION

For these reasons, we affirm the trial court's judgment, remand father's request for attorney's fees and costs to the trial court, and grant the guardian *ad litem*'s request for fees.

<u>Affirmed and remanded.</u>