COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Russell and Senior Judge Frank


ALAN STANLEY PETERSEN

v.      Record No. 0461-16-2

TINA ROBERTSON PETERSEN

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 4, 2016


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

(William H. Hurd; Stephen C. Piepgrass; Charles E. Powers;
Troutman Sanders LLP; Batzli Stiles Butler PC, on briefs), for
appellant.

(Mary Burkey Owens; Jeremiah M. Yourth; Anne L. Roddy,
Guardian *ad litem* for the minor child; Owen & Owens PLC;
Florance Gordon Brown PC, on brief), for appellee.


Alan Stanley Petersen (father) appeals a visitation order. Father argues that the circuit court erred by (1) failing to grant his motion to appoint an independent custody evaluator and continue the case; (2) "effectively terminating or restricting" his parental rights by prohibiting him from contacting his child or participating in the child's school activities, which violates his constitutional rights; (3) denying him all visitation with his child and failing to order counseling to improve their relationship; and (4) making certain factual findings, including that father's contact with his child was "unhealthy and potentially dangerous," in order to support its restrictive rulings. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal, we view the evidence in the light most favorable to . . . the party prevailing below." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335, 610 S.E.2d 876, 882 (2005) (citations omitted).

Father and Tina Robertson Petersen (mother) have two sons and one daughter, born in December 1997, June 1999, and April 2003, respectively.[1] For several years prior to 2013, the parties' marriage was strained. In 2013, father suspected mother of having an affair. He discussed his suspicions with his minister, Chris Bell, who also is a private investigator with Central Virginia Investigations (CVI). Bell suggested that father retain CVI to investigate mother, which father did.

On October 15, 2013, father met with Bell and told Bell that God had revealed to father the identity of mother's alleged paramour. Father also stated that mother "becomes the evil, and she must be stopped." Father told Bell several times that he was going to kill mother. After the meeting, Bell was concerned for mother's safety and contacted the police.

Father denied making the threatening comments, but his journal entries corroborated Bell's testimony.[2] Furthermore, Officer Travis Owens went to the parties' home to forewarn mother and wait for father. Mother and the children left the home. When father returned to the house, he was evasive with Owens. Father did not say that Bell was lying, but said that he must have misunderstood father. Owens placed father in emergency custody and brought him to meet

---

[1] This appeal focuses on the parties' daughter. The parties' sons were not subject to the underlying visitation order.

[2] The circuit court also made a finding that father was less than credible. Specifically, in reviewing the conflicting evidence offered by father, the trial court noted that it "found [father] to be evasive, equivocating and calculating. The Court, on two occasions, had to direct [father] to be responsive to questions. The Court has nagging doubts as to [father]'s credibility, doubts which are aggravated by the entirety of the evidence and testimony."

with John Tyler, a licensed clinical social worker with Chesterfield County Mental Health. Tyler believed father to be paranoid and depressed. Since father appeared to have homicidal thoughts about mother, Tyler recommended that father be detained for further psychiatric evaluation. A temporary detention order was issued, and father was transported to a psychiatric hospital. Father was released from the psychiatric hospital on October 18, 2013.

Mother obtained a two-year protective order and left Chesterfield County with the children. When the children learned of father's actions, their relationships with father deteriorated. Mother sought the assistance of a counselor for the children.

Father filed petitions for custody and visitation in the Chesterfield County Juvenile and Domestic Relations District Court (the JDR court). On February 26, 2014, the JDR court appointed Dr. Sandy Cassel as "the father/children counselor in this matter." The order stated that Dr. Cassel "shall work on re-establishing and strengthening the father/children relationship." Furthermore, the order indicated that the "counselor shall dictate therapeutic visitation, including but not limited to telephone calls and supervised visitation." Dr. Cassel met with the parties and determined that he would act as a "coach."

In addition, on February 26, 2014, the JDR court appointed Dr. Leigh Hagan as an independent custody evaluator. The order stated that Dr. Hagan was to conduct a custody evaluation, as well as independent mental health evaluations. Dr. Hagan filed a report dated August 19, 2014 with the JDR court. He also prepared a follow-up report on July 1, 2015.

Dr. Cassel arranged for father and the children to start communicating via Skype. The children's counselor was present with the children during the Skype sessions. Despite the children telling father how they felt, father dismissed their feelings. Both Dr. Cassel and Dr. Hagan discussed this situation with father.

- 3 -

In the fall of 2014, the visitations progressed to supervised, in-person meetings. The youngest child told father that she was afraid of him and that she was angry and upset with him. After father dismissed her concerns, she stopped speaking with him during their sessions. The visitation sessions did not improve. In June 2015, Dr. Cassel recommended that the reconciliation sessions end and that the children continue to see their counselor.

On August 10, 2015, the JDR court entered a final custody and visitation order. The JDR court granted mother sole legal and physical custody of the children. The JDR court also awarded father visitation with their daughter "on an increasing basis," beginning with letters, and gradually moving to supervised visitation during the days, and ultimately, to unsupervised visitation for overnights. Both parties appealed the JDR court orders.

On September 15, 2015, father filed a motion and asked the circuit court to re-appoint Dr. Hagan as the independent custody evaluator. The circuit court did not immediately rule on this motion.

On October 10, 2015, father visited with his daughter and her counselor at a YMCA for a supervised visitation. The child became extremely upset. The YMCA manager had to ask father and the child to move to a private area because the situation was disturbing the YMCA patrons.

After the October 10, 2015 visit, the guardian *ad litem* (GAL) and mother filed motions to suspend visitation. On October 30, 2015, the parties appeared before the circuit court. After hearing the evidence and argument, the circuit court suspended father's visitation pending a full hearing, which was scheduled for January 8, 2016.

On December 28, 2015, father filed another request for the appointment of an independent custody evaluator and moved to continue the January 8, 2016 hearing. The circuit court denied the motion; however, it did allow father to call Dr. Hagan as his expert witness.

- 4 -

On January 8, 2016, the parties presented evidence and argument. In addition to the parties' testimony, several mental health experts testified about the situation. The child's counselor testified that after father's visitation with his daughter was suspended, the child's demeanor improved. The counselor opined that the child would be negatively impacted if she had further visitation with father. Mother requested that father's visitation with the child be terminated. Father indicated that he would do whatever was necessary for visitation to work, and he asked for counseling with the child. On January 14, 2016, the circuit court issued its ruling from the bench. It ruled in favor of mother and stated that "termination of [father's] visitation rights, while regrettable, is a necessary and appropriate remedy . . . ."

On February 22, 2016, the circuit court entered an order memorializing its rulings. The order terminated father's visitation rights with his daughter and stated that he was to "have no contact, directly or indirectly, with [the child]." The order further stated that father was prohibited from "participating in, or being notified of, [the child's] school activities."

Prior to entering the order, the circuit court stated from the bench that a termination of visitation was not a termination of parental rights. Specifically, the trial judge stated

> that termination of visitation is not, in fact, a true termination. The Court's order is always subject to review upon a material change of circumstances. Still, the Court recognizes the practical and immediate effect on Mr. Petersen of an order terminating visitation. But, more importantly, the Court recognizes the practical and immediate effect such an order will have on [the child]. The Court believes it will relieve her of a burden that has been unjustly on her since October, 2013. The Court believes it will allow her to continue into her teen years, with all of the vital developmental and maturity issues inherit [sic] in those years, without having to contend with an adult problem not of her making. The Court believes it will assist her in dealing with her justified fears and anxieties. The Court believes it will free her from the unhealthy and potentially dangerous conduct of a father who unquestionably loves her but who has made decisions, made statements and taken actions that have not been in [the child]'s best interest. The Court believes that termination of Mr. Petersen's visitation rights, while regrettable, is a necessary and appropriate

remedy, given the facts of this case, and is in the best interest of [the child]. This is not a step this Court takes lightly.

Father filed a motion to reconsider. Despite the circuit court's statement making clear that father's parental rights were not being terminated by the termination of visitation, father essentially argued that the court's order effectively terminated his parental rights. He asked the circuit court not to terminate his visitation rights, but to suspend them. He also asked that the circuit court order counseling between him and his daughter.

At the hearing, the trial judge referenced his earlier statement that a termination of visitation was not a termination of parental rights and that father continued to have the ability to petition for visitation upon a showing of changed circumstances. Recognizing that its use of the phrase "termination of visitation" was being misinterpreted, the circuit court entered an amended order to clarify its ruling. Specifically, on March 11, 2016, the circuit court entered an amended order, which replaced the language that father's visitation was terminated with language that father's request for visitation was denied. It further stated that the court "decline[d] to order any specific visitation schedule with [the child]." The circuit court did not order counseling between father and the child. This appeal followed.

ANALYSIS

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "A trial court's determination with regard to visitation is reversible only upon a showing that the court abused its discretion." Stadter v. Siperko, 52 Va. App. 81, 88, 661 S.E.2d 494, 497 (2008) (citing M.E.D. v. J.P.M., 3 Va. App. 391, 398, 350 S.E.2d 215, 221 (1986)). "Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992).

*Assignment of error #1*

Father argues that the circuit court abused its discretion by failing to grant his motion for an independent custody evaluator and continue the case so the evaluator could complete his evaluation.

> The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case. The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant.

Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007).

The JDR court appointed Dr. Hagan as an independent custody evaluator. On September 15, 2015, father filed a motion for the re-appointment of Dr. Hagan as an independent custody evaluator in the circuit court. He did not schedule a hearing for his motion to be heard.

On October 30, 2015, the parties appeared before the circuit court for an emergency hearing on visitation. During the hearing, father attempted to call Dr. Hagan as a witness. The circuit court refused to allow Dr. Hagan to testify and questioned the need for an independent evaluator for the final hearing in January 2016. Father did not attempt to resolve the issue at the October 30 hearing.

On December 28, 2015, which was eleven days prior to the final hearing, father filed a second motion for an independent custody evaluation. He did not request the re-appointment of Dr. Hagan, but he did ask the court to continue the hearing on January 8, 2016.

At the beginning of the hearing on January 8, 2016, father presented his motion to the circuit court. Mother opposed the appointment of an independent custody evaluator and a continuance. The circuit court denied father's motions and commented on how long the case had been pending. It noted that the case started in October 2013 and was appealed to the circuit court in September 2015. The circuit court stated, "All to say that the Court believes at this point it is

- 7 -

in the best interest of [the child] to get this matter resolved today because it has been going on now for some time." The circuit court noted that father could have requested the evaluations earlier.

"Although not dispositive, a trial court certainly may consider the fact that a case has been pending for a lengthy period of time in weighing the appropriateness of a continuance." Harvey v. Flockhart, 65 Va. App. 131, 142, 775 S.E.2d 427, 432 (2015).

The circuit court did not abuse its discretion in denying the motion. Father filed his first motion in September 2015 and never sought a hearing on that motion. Then, he waited until eleven days before the hearing to file his second motion and sought to argue that motion on the day of the ultimate hearing. He had sufficient time prior to the January 8, 2016 hearing date to request a hearing on his motions, but he did not do so. Furthermore, the case had been ongoing for over two years. Based on father's lack of due diligence in scheduling the motions and the length of time that the matter had been pending overall, the circuit court did not abuse its discretion in denying father's motion.

> Since we find the trial court did not abuse its discretion in denying [father's] request for a continuance, we need not address whether [father] was prejudiced by the denial of [his] motion. See Bolden v. Commonwealth, 49 Va. App. 285, 290, 640 S.E.2d 526, 529 (2007) (explaining that a party needs to show abuse of discretion and resulting prejudice because "[t]he absence of one renders inconsequential the presence of the other" (citing Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 509-10 (1990))); see also Cooper v. Commonwealth, 54 Va. App. 558, 565, 680 S.E.2d 361, 365 (2009).

Wroblewski v. Russell, 63 Va. App. 468, 486, 759 S.E.2d 1, 9 (2014).

Father argues that the circuit court erred by "effectively terminating" his visitation with his daughter.[3] He contends the circuit court erred by ruling that he was to have no contact with his daughter and prohibiting him from participating in, or being notified of, her school activities. He further asserts that the circuit court should have ordered counseling between him and his daughter. Father argues that these rulings violated his "fundamental liberty interest" in raising his child.

"Custody and visitation disputes between two fit parents involve one parent's fundamental right pitted against the other parent's fundamental right. The discretion afforded trial courts under the best-interests test, Code § 20-124.3, reflects a finely balanced judicial response to this parental deadlock." Griffin v. Griffin, 41 Va. App. 77, 83, 581 S.E.2d 899, 902 (2003).

The circuit court acknowledged that its "controlling consideration is [the child's] welfare and best interest." In order to determine the child's best interests, the circuit court fully examined the factors in Code § 20-124.3. The circuit court commented on the child's age and physical and mental condition. The circuit court acknowledged that the child was fearful of and felt anger toward father and that, after the visitations stopped in October 2015, the child had "a brighter affect." The circuit court recognized that the child did not want to see father and found that the child was "of reasonable intelligence, understanding, age and experience to express such

---

[3] As he did in the trial court, father mischaracterizes the termination of his visitation rights as effectively foreclosing the possibility that he would ever again be awarded visitation with his daughter. This simply is not so. As the circuit court noted on multiple occasions, father can petition for resuming visitation based on a change in circumstances. Moreover, the circuit court made clear that demonstrating such a change in circumstances was well within father's control, stating that "[i]t is the hope of this Court that [father] will seek such treatment and counseling that will address the issues brought to light by these proceedings, but the responsibility for doing that lies with [father] and not with [others]."

a preference." The circuit court also commented on the parents', especially father's, mental and emotional conditions. The experts described father as being in good mental and emotional health; however, he "tends to be suspicious."

Then, the circuit court focused on the statutory factors regarding the child and her relationship with her parents, the parents' ability to assess and meet the child's needs, the role that each parent has played and will play in the future, and the propensity of each parent to support the child's relationship with the other parent. Two of the experts testified that father was "not a threat" to the child; however, the same two experts were frustrated by father's inability to realize what he had done and to correct his behavior. The circuit court noted that father never "attempted to take any steps to respond to [the child's] fears" about the October 2013 incident. The circuit court found that father did not have the ability to meet or assess the child's emotional needs because the evidence proved that he "was more concerned with making his own points than in listening and responding to [the child]." The circuit court determined that father's "actions show a disturbing tendency toward self-justification instead of seeking to serve [the child's] best interest."

After a careful review of the Code § 20-124.3 factors, the circuit court concluded that "visitation between [the child] and Mr. Petersen is contrary to [the child's] best interest." It further stated, "This is not a step this Court takes lightly." However, the Court believed that its decision would "relieve [the child] of a burden that has been unjustly on her since October, 2013" and that it would "assist her in dealing with her justified fears and anxieties." These findings support the circuit court's decision not to order counseling between father and the child.

> The authority vested in a trial court to decide issues concerning the
> care, custody, support and maintenance of the minor children, the
> visitation rights of the non-custodial parent, and the extent to
> which those rights and responsibilities shall be apportioned
> between estranged parents is a matter of judicial discretion which

courts must exercise with the welfare of the children as the paramount consideration.

Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986).

Contrary to father's arguments, the circuit court specifically stated that its decision to deny father's motion for visitation and not order a specific schedule was "not, in fact, a true termination" of visitation. The circuit court reminded the parties that the order was "subject to review upon a material change of circumstances." Furthermore, the circuit court told the parties that the order did not prevent the child from contacting father, if she wanted. Mother also could notify father of the child's school activities or arrange visitations between father and the child, upon consulting with the child and the child's therapist.

The record supports the circuit court's findings and rulings. "If the decision of the trial court is supported by the evidence, 'we are not permitted to substitute our judgment for that of the chancellor.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 252, 498 S.E.2d 425, 431 (1998) (quoting Stainback v. Stainback, 11 Va. App. 13, 23, 396 S.E.2d 686, 692 (1990)). Accordingly, the circuit court did not abuse its discretion in denying father's motion for visitation and ordering that he have no contact with the child.

*Attorney's fees and costs*

Mother asks this Court to award her attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). On consideration of the record before us, we deny her request for an award of attorney's fees and costs she incurred on appeal.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed

- 11 -